## In re LUFTIG.

(District Court, D. Massachusetts. September 13, 1905.)

1. BANKRUPTCY—DISCHARGE—GROUNDS FOR REFUSING.

The fact that a bankrupt, after the filing of the petition against him, procured the buying up of a creditor's claim, and furnished the money therefor, with intent to defeat the bankruptcy act, is not a ground for refusing his discharge, under Bankr. Act July 1, 1898, c. 541, § 14b (1), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), where it is not shown that the creditor knew that the bankrupt furnished the money, so as to render him guilty of an offense under section 29b (4), 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), although, if he was guilty of such offense, the bankrupt was also guilty as a participator therein.

2. SAME—COMMISSION OF FRAUD WHICH WOULD WARRANT REVOCATION.

The court is not required to grant a discharge to a bankrupt, knowing at the time that facts exist which would render such discharge revocable for fraud had they first come to light after it was granted, although no cause for refusing it is shown under Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427).

3. SAME—MAKING FALSE OATH.

A bankrupt refused a discharge on the ground that he made a false oath in his testimony given in the bankruptcy proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 732–734.]

In Bankruptcy. On application for discharge.

Warren & Garfield, for objecting creditors.
Arthur Taylor, for bankrupt.

DODGE, District Judge. Luftig was adjudged bankrupt February 4, 1904, upon an involuntary petition filed by three creditors October

31, 1903. He contested the adjudication, which was finally ordered after a reference, in the course of which a considerable amount of evidence was taken and a report thereon filed by the referee January 28, 1904. The referee found that, being insolvent at the time, Luftig had conveyed property to certain of his creditors with intent to prefer them.

On August 6, 1904, the trustee in bankruptcy reported, although with some hesitation, that after examination he had been unable to discover any facts on the strength of which the bankrupt's discharge should be refused. The bankrupt applied for a discharge on May 28, 1904, and specifications of grounds of opposition were thereafter filed by several creditors. The referee to whom these were referred reported on May 4, 1905, that the charges made in them of failure to keep books of account and of concealment of assets had not been sustained, but that a charge of having purchased a claim from a creditor with intent to defeat the bankrupt act was sustained; also charges of having made false oaths in the proceedings in the case.

At the hearing which has been had before the court upon this report, both the bankrupt and one of the objecting creditors disputed the conclusions reached by the referee. As appears by the report, at the hearing before the referee on objections to the discharge the testimony taken at the earlier hearing on adjudication, and also the testimony taken during the bankruptcy proceedings prior to the application for discharge, was used, under an agreement of counsel making any evidence, taken at any stage of the proceedings, so far as the same was material and competent, available upon the question of discharge. All the evidence before the referee has been submitted to the court with his report.

1. So far as those grounds of opposition which have not been sustained by the referee are concerned, I am unable, on the whole, notwithstanding the argument of the objecting creditors, to find sufficient reason for disagreeing with the conclusions which the referee has reached.

2. The specification in relation to the purchase of a claim from a creditor, which the referee has found to be sustained, had not been made at the time the question of discharge was sent to the referee for report, but was contained in an amendment to the specifications originally filed, allowed by the court on April 6, 1905. It is as follows:

"Said bankrupt, on or about March 1, 1904, either himself or acting by one Jacob Soperstein and one Barney Aaronson, or one or more of said parties, did, with intent to defeat the bankruptcy act, and for the purpose of preventing or reducing opposition to his discharge in these bankruptcy proceedings, and for the purpose of eliminating from these proceedings one Louis Rosenberg, a creditor of his and one of the petitioning creditors in said bankruptcy petition, and said Rosenberg's attorney, make a settlement with said Rosenberg by which said Rosenberg's claim was satisfied in such a way that said Rosenberg and said [attorney] took no further part in these bankruptcy proceedings."

Assuming that the above specification sufficiently charges the bankrupt with the offense of which the referee finds him guilty, viz., that of aiding and participating in the receipt by Rosenberg of a material amount of property from the bankrupt, after the filing of his petition, with intent to defeat the act (Act July 1, 1898, c. 541, 30 Stat. 544 [U.

S. Comp. St. 1901, p. 3418]), and agreeing as I do with the referee that, if Rosenberg was guilty of the offense described in section 29b (4), the bankrupt was guilty of the same offense if he participated in Rosenberg's commission of it by virtue of section 1 (19), I am still unable to regard Rosenberg's guilt as sufficiently established by the evidence. There is no claim that Rosenberg received any money directly from the bankrupt. What he received was paid to him or to his attorney by Aaronson or Soperstein. Under these circumstances, unless he knew that the money so paid came from the bankrupt, I do not think he is proved guilty of having committed the offense referred to. The mere sale of his claim to Aaronson or Soperstein would not necessarily be a commission of that offense, or necessarily involve any intent to defeat the act. The referee has nowhere expressly found that Rosenberg knew that the money paid really came from the bankrupt, and the evidence does not convince me that such a finding was required or could be supported. If Rosenberg is not shown to have committed the offense, the bankrupt is not shown to have been a participant in it, and the utmost that can be said of him is that he procured the buying up of a creditor's claim and in some way provided or promised the money used for the purpose. This, though done with intent to defeat the act, is not a ground under section 14b for refusing his discharge.

The evidence shows, however, that Rosenberg received for the assignment of his claim to Aaronson or Soperstein its full amount and something further wherewith to pay his attorney's charge. I accept the referee's conclusion that the money paid came in some form from the bankrupt, and that the claim was thus purchased for the purpose of getting rid of a troublesome prosecutor. I agree with the referee that the purchase of the claim constituted a fraud upon the other creditors, and that such a fraud would make the discharge revocable under section 15, had it been granted before the facts were shown. I am unable to believe that the act requires the court to grant a discharge, knowing at the time that facts exist which would thus render it revocable for fraud, had they first come to light after it was granted, although no cause for refusing it under section 14b is shown. The facts proved in regard to the settlement of the Rosenberg claim would therefore, in my opinion, justify me in refusing the discharge, did the case present no other reasons for doing so; but other sufficient reasons appear, wholly independent of the settlement in question.

3. The bankrupt's testimony on December 23, 1903, during the hearing on the question of adjudication, first, that he did not remember what amount of stock in trade he had sworn to on May 25, 1903, as then owned by him, and later, on the same day, that he was sure he did not swear on May 25, 1903, that he then owned stock to the amount of $5,-000, and also his testimony on January 20, 1904, in the same hearing, that the amount of stock he swore to on May 25, 1903, was $2,500, is, in my opinion, clearly shown to have been false testimony. Each of the above statements I consider to have been a false oath, knowingly and fraudulently made by the bankrupt in these proceedings, and material therein. That the bankrupt did in fact swear on May 25, 1903, for the purpose of qualifying as surety on a bond to dissolve an attach-

ment, that he then had a stock of jewelry worth $5,000 and unincumbered, is proved by the evidence of the attorney for the plaintiff in the suit wherein the attachment was made, by the evidence of the master in chancery before whom the oath was taken, and by his record of the oath then taken by the bankrupt. This evidence was introduced after the bankrupt's first testimony on December 23, 1903, which is above referred to, but before his later testimony given on the same day, and before his testimony given on January 20, 1904, also above referred to. I cannot doubt that the bankrupt knew perfectly well what he had sworn to when seeking to qualify before the master in chancery, and that his statements that he did not remember and that he did not swear to $5,000 worth of property were attempts to avoid the effect apprehended in the bankruptcy proceedings from the fact that he had so sworn.

The discharge is refused.